**Jeffrey WHITE, et al., Plaintiffs,**

**v.**

**CITY OF TOLEDO, et al., Defendants.**

**No. 3:01CV7164.**

United States District Court, N.D. Ohio, Western Division.

Sept. 18, 2002.

James R. Greene, III, James R. Greene, III & Associates, Dayton, OH, for Plaintiffs.

Adam W. Loukx, City of Toledo, Jay E. Feldstein, Stacey A. O'Stafy, Kalniz, Iorio & Feldstein, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

This is civil rights suit brought by the parents of two children killed by a motorist, Richard Gonzales, as the children were crossing a street away from a crosswalk and the motorist was passing a vehicle whose driver had stopped to let the children cross the street. The individual officer defendants reported to the scene of the accident.

The gravamen of plaintiffs' complaint is that the City, acting through the defendant officers and its Chief of Police, Michael Navarre, and Mayor, Carleton S. Finkbeiner, violated the civil rights of the deceased children by failing: 1) prior to the accident to enforce the City's speed limits, and 2) after the accident to conduct an adequate investigation into its circumstances. According to plaintiffs, the City has a policy of deliberate non-enforcement of its speeding laws, and the inadequacies of the post-accident investigation deprived the children of their right to equal protection of the laws.

The plaintiffs base their claim of failure to enforce on the deposition of Officer

Kachenmeister, who testified that he was discouraged from citing speeders unless they were more than ten miles over the limit. According to his testimony, unless other unsafe conditions were present, citations for less than fifteen miles over the limit would be dismissed.

The claim of insufficient investigation is based on the fact that Gonzales was not given a breathalyzer examination or blood test or cited for speeding or driving under the influence. Gonzales had been observed traveling 40–45 mph shortly prior to the accident. The speed limit was 35 mph. An open beer can was found in the console of his vehicle, and officers detected a slight odor of alcohol. Gonzales admitted having drunk beer sometime during the day.

Field sobriety tests were administered. The officer administering the tests concluded that Gonzales could not be cited for driving under the influence, though one of the tests suggested some impairment. Gonzales agreed to go to the stationhouse to take a breathalyzer test. Once there, he contacted an attorney, who advised him not to take the test.

Ohio law requires administration of blood alcohol tests within two hours of a suspect's being taken into custody. As noted, the officers anticipated that Gonzales would take the test after arriving at the stationhouse. At the time of the accident, the City did not have a procedure for obtaining search warrants to have a blood sample withdrawn involuntarily.

Gonzales was not cited for either speeding or driving under the influence. He was, however, charged with four misdemeanors: two counts of vehicular homicide based on excessive speed and impairment, one count of improper passing, and one count of having an open alcohol container in his car. He plead no contest to the open container charge and was acquitted at trial on the other three charges.

The Lucas County Prosecutor twice presented evidence to the grand jury, seeking a felony-level indictment on two counts of vehicular homicide. The grand jury declined to indict.

### Discussion

#### 1. Failure to Enforce Speed Limit

The plaintiffs claim that the City of Toledo had a policy of non-enforcement of its speed limits, and that that policy manifested deliberate indifference towards the well-being of their children and other residents of the City.

█ The law is well established that a city's alleged failure, even if intentional, to enforce speed limit does not state a § 1983 against a municipality. *Hull v. City of Duncanville*, 678 F.2d 582, 584 (5th Cir. 1982); *see also Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir.1993) ("the police have no affirmative obligation to protect citizens from drunk drivers."); *Wark v. Board of County Com'rs of County of Dolores*, 47 P.3d 711, 716 (Colo.App., 2002) (failure properly to maintain road, even if intentional, not a basis for a § 1983 claim); *Wright v. Bailey*, 611 So.2d 300, 302, 306 (Ala.1992) (finding no municipal § 1983 liability where an officer permitted intoxicated driver to operate a vehicle); *Biggs v. Beth*, 1989 WL 168122 (Mo.App. W.D.) (city not liable under § 1983 for failure to enforce drunk driving laws against patrons of downtown bar).

█ Plaintiffs cannot, therefore, prevail on their claim that the City's failure to enforce its speed laws, even if shown by them to have been an intentional policy, deprived their children of rights, privileges, or immunities secured under the Constitution or laws of the United States.

#### 2. Failure to Investigate

█ Plaintiffs claim that the police officer defendants failed to conduct an ade-

quate investigation, thereby depriving the deceased children of their right to equal protection of the laws. Assuming that a failure to investigate can rise to the level of an equal protection violation, the plaintiffs in this case have failed to show that such failure, if it occurred in this case, was based on their race or some other suspect classification, and that others have been treated differently, and more favorably. *Compare Lowers v. City of Streator,* 627 F.Supp. 244 (N.D.Ill.1985) (plaintiff's allegation that defendants' failure to arrest a rapist, who later raped her again, and continue an investigation resulted from her status as a woman stated § 1983 claim.).

As the Sixth Circuit has stated:

Because Plaintiff failed to allege invidious discrimination based upon his membership in a protected class, his equal protection claim fails at the inception. In order for Plaintiff's claim to survive Defendants' motion, Plaintiff had to allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification. As explained by the Court of Appeals for the Seventh Circuit ..., "[a] person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." Inasmuch as Plaintiff merely alleged that he was treated unfairly as an individual by Defendants' actions, his equal protection claim was properly dismissed.

*Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir.1999) (citations omitted).

This is the situation here: the plaintiffs have failed to allege, much less present any proof whatsoever that any inadequacies in the investigation were based on their childrens' race, and that persons of other races were treated differently. In similar circumstances summary judgment has been granted to individual defendants and their municipal employers:

[T]he officers' conduct was not a violation of plaintiff's right to equal protection unless there was also a racially motivated animus, and plaintiff has failed to put forth such evidence. Instead, plaintiff's equal protection claim is based solely on her own conclusory and unsupported allegations, and she has failed to put forth any admissible evidence showing that the individual defendants purposefully failed to properly investigate her son's death because of his race. Plaintiff has also failed to put forth any admissible evidence showing that the City of Muskogee, through its police department, had a general policy or custom of not properly investigating crimes involving black victims as is required to establish a § 1983 claim for municipal liability.

*Maxey v. Banks,* 2001 WL 1475069, *2, 26 Fed.Appx. 805 (10th Cir.2001) (Unpublished disposition).

In any event, the law is also clear that there is no "constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime." *Doe v. Mayor and City Council of Pocomoke City,* 745 F.Supp. 1137, 1138 (D.Md.1990). Such "discretionary public duties ... are enforced by public opinion, policy, and the ballot," not litigation against individual officers and their civic employers. *Id. Accord, Sattler v. Johnson,* 857 F.2d 224, 226 (4th Cir.1988) (individual did not have a constitutional right under the equal protection clause to be presented with information to enable a civil suit or to have a crime prosecuted); *Walker v. Schmoke,* 962 F.Supp. 732, 733 (D.Md.1997) ("[N]o federal appellate court, including the Supreme Court ... has recognized that there is a federally enforceable right for the victim

to have criminal charges investigated at all, let alone with vigor or competence."); *Fulson v. City of Columbus,* 801 F.Supp. 1, 6 (S.D.Ohio 1992) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a right to compel a public official to act.").

This doctrine is the logical consequence of the Supreme Court's ruling in *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." Just as the state in that case had no constitutional duty to protect a child whose mother claimed was being abused by its father, the officers and City in this case had no constitutional duty to conform their investigation to the dictates or desires of the plaintiffs.

In light of the foregoing, I conclude that the defendants are entitled to summary judgment as to plaintiffs' claim of an inadequate investigation of Gonzales.

### Conclusion

Plaintiffs have not shown that actions or inaction on the part of any of the defendants violated their rights, privileges, or immunities under federal law or the United States Constitution. The defendants are, accordingly, entitled to summary judgment, without regard to their entitlement to qualified immunity.

It is, therefore,

ORDERED THAT defendants' motions for summary judgment be, and the same hereby are granted.

So ordered.