**Sorel Irene WOODS, a minor, etc., Plaintiffs,**

v.

**MIAMISBURG CITY SCHOOLS, et al., Defendants.**

**No. C–3–02–185.**

United States District Court, S.D. Ohio, Western Division.

Feb. 4, 2003.

ACT is a decision which must be left to the parties themselves to determine, per the terms set forth in ACT.

James Greene, III, Dayton, OH, for Plaintiff.

Gregory Scott, Patrick Dunphy, Nicholas Subashi, Dayton, OH, for Defendants.

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART THE MOTION OF DEFENDANTS CITY OF MIAMISBURG AND OFFICER JOEL MITCHELL TO DISMISS, PURSUANT TO FED. R. CIV. P. 12(B)(6) (DOC. #2); PLAINTIFF MAY SEEK LEAVE TO FILE AMENDED COMPLAINT; THE STAY OF PROCEEDINGS ENTERED BY THE COURT ON DECEMBER 5, 2002 (DOC. #11), IS RESCINDED AND THE PRELIMINARY PRETRIAL CONFERENCE ORDER OF OCTOBER 31, 2002 (DOC. #12), AS AMENDED ON NOVEMBER 25, 2002 (DOC. #13), IS IN EFFECT

RICE, Chief Judge.

At the time of the filing of the Com-

plaint, Plaintiff SoRel[1] Irene Woods ("Plaintiff"), an African–American, was a sixteen year old junior at Miamisburg High School in Miamisburg, Ohio (Compl.¶ 1).[2] Throughout the 2001–2002 school year, she allegedly was subjected to race discrimination, in that teachers and students were permitted to threaten her, both physically and verbally, without consequence (*id.* ¶ 11). In particular, Plaintiff alleges that Caucasian students threw food at her and other African–American students and directed racial slurs toward her, and that she was physically assaulted by Defendant Joel Mitchell, a Miamisburg police officer who was assigned to the school (*id.* ¶¶ 13, 15). Plaintiff asserts that she complained about the racial harassment, but no action was taken (*id.* ¶¶ 12, 16). On March 19, 2002, Plaintiff's mother, Sonya Townsend, wrote to the school, complaining about the harassment and the assault by Officer Mitchell (*id.* ¶ 13, Ex. B). Shortly thereafter, Officer Mitchell initiated charges against Plaintiff for being disorderly (*id.* ¶ 14).

On April 23, 2002, Plaintiff, by and through her parents, Kerry and Sonya Townsend, brought suit in this Court against the City of Miamisburg, the Miamisburg Board of Education, Miamisburg City Schools and Officer Joel Mitchell, setting forth four claims for relief, to wit: (1) a claim for violation of her rights under the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. §§ 1981 and 1983, by discriminating against her on the basis of race and by infringing on her property right to a public education; (2) a state law claim for violation of Article I, Section 2, of the Ohio Constitution; (3) a state law claim for violation of Ohio's public policy against discrimination in public places; and (4) a state law claim against the City of Miamisburg and Officer Mitchell for assault and battery (Doc. # 1).

Pending before the Court is the Motion of the City of Miamisburg and Officer Mitchell to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(6) (Doc. # 2).[3] For the reasons assigned, Defendants' Motion is SUSTAINED IN PART and OVERRULED IN PART.

## I. Standard for Rule 12(b)(6) Motions to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.)(citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993)), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Barrett v. Harrington,* 130 F.3d 246 (6th Cir.1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1517,

---

1. The body of the Complaint refers to Plaintiff as "Sorel." However, Plaintiff's Statement, which is attached to the Complaint as Exhibit A, indicates that her names is "So'Rel." Her mother's correspondence to the Miamisburg High School, which is attached to the Complaint as Exhibit B, states "SoRel." Because this Court is presented with a variety of options as to the proper spelling of Plaintiff's name, the Court has elected to use the spelling provided by her mother.

2. The following facts are taken from Plaintiff's Complaint (Doc. # 1). In accordance with the standard governing Rule 12(b)(6) motions to dismiss, the Court has taken Plaintiff's factual allegations as true and has construed those allegations in the light most favorable to her.

3. The Court notes that Defendants Miamisburg City Schools and Miamisburg Board of Education have not, at this time, moved for dismissal of the claims against them.

140 L.Ed.2d 670 (1998)("In considering a motion to dismiss for failure to state a claim, the Court is required to take as true all factual allegations in the complaint."); *Lamb v. Phillip Morris, Inc.*, 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied*, 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

II. *Defendants' Motion to Dismiss (Doc. # 2)*

A. *Plaintiff's Claims of Violation of her Rights Under the First and Fourteenth Amendments to the United States Constitution; 42 U.S.C. §§ 1981 and 1983 (Count One)*

In Count One of her Complaint, Plaintiff asserts that Defendants violated her rights under the First and Fourteenth Amendments to the United States Constitution, by discriminating against her on the basis of race and by infringing on her property right to a public education. Plaintiff sets forth claims for these violations, pursuant to 42 U.S.C. §§ 1981 and 1983. Defendants seek dismissal of all aspects of this Count.

1. *Plaintiff's Claims of Violation of the First Amendment to the United States Constitution*

The Court begins with Plaintiff's allegation that Defendants have violated her rights under the First Amendment to the

United States Constitution. Defendants assert that Plaintiff's First Amendment claims must be summarily dismissed, because she has made no mention of that Amendment in the body of her Complaint. They note that she makes only a passing reference to the First Amendment in the caption of her First Claim for Relief. Plaintiff does not argue in her Memorandum in Opposition that she has asserted any First Amendment claim, nor that such a claim has been adequately pled. Accordingly, in light of the lack of specific factual allegations in the Complaint in support of these claims and of any suggestion that such claims were intended, Defendants' Motion to Dismiss Count One, to the extent that it is based on violations of the First Amendment, is SUSTAINED.

2. *Plaintiff's § 1983 Claims Based on Violations of the Fourteenth Amendment to the United States Constitution*

■ 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, subjects any other person to the deprivation of rights secured by the Constitution and laws of the United States. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716 (6th Cir.1996). However, "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of state tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Thus, to state a § 1983 claim against Officer Mitchell, Plaintiff must establish (1) the deprivation of a right secured under the Constitution or federal law; and (2) that deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Brock v. McWhert-*

*er,* 94 F.3d 242, 244 (6th Cir.1996); *Alkire v. Irving,* 305 F.3d 456, 466 (6th Cir.2002). When a § 1983 claim is asserted against a municipality, the court must determine: (1) whether Plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the governmental entity is responsible for that violation. *Collins v. Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

Herein, Plaintiff appears to allege that Defendants, acting under color of state law, have violated her right to equal protection of the laws by allowing her to be threatened, both physically and verbally, by being physically assaulted, and by failing to follow the Pride Handbook, the administrative policy of Miamisburg High School as it pertains to the rights of students (Compl.¶¶ 11, 22, 23).[4] She further alleges that her rights have been violated in that Defendants interfered with her property right to receive a public education free from racial discrimination (*id.* ¶ 23). In addition, Plaintiff alleges that Defendants acted with deliberate indifference to the policies, customs and practices set forth in the Pride Handbook.

At the outset, it is clear that Defendants acted under color of state law. The City is a municipality and Officer Mitchell's alleged conduct occurred while performing his duties as a police officer at Miamisburg High School. Thus, the Court must focus on whether Plaintiff has alleged facts to support a claim that Defendants violated her constitutional rights under the Fourteenth Amendment.

Plaintiff's claims against Officer Mitchell appear to be based on his actions in his capacity as a law enforcement officer when he failed to prevent fellow students from racially harassing and assaulting her, and when he failed to investigate her allegations that such conduct occurred (Doc. # 5 at 5). Although Plaintiff asserts that Officer Mitchell had an official duty to protect her, a police officer is not under any constitutional obligation to prevent harassment by private parties, such as other students. *DeShaney v. Winnebago County Dept. of Soc. Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Soper v. Hoben,* 195 F.3d 845, 853 (6th Cir.1999) (no claim based on school's failure to protect educable mentally impaired student from harassment and assault by other students). Accordingly, Plaintiff's claim against Officer Mitchell for failing to protect her must be dismissed. Her claim against the City of Miamisburg, based on this conduct by Officer Mitchell, likewise must be dismissed, for if there is no constitutional violation, there is nothing for which the City of Miamisburg can be responsible.

As for Plaintiff's allegations that Officer Mitchell failed to investigate her complaints, the law is clear that a private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime. *White v. City of Toledo,* 217 F.Supp.2d 838 (S.D.Ohio 2002) (quoting *Doe v. Mayor*

---

4. In her Memorandum in Opposition, Plaintiff argues that Officer Mitchell failed to protect her from harassment and assault by other students. She noticeably did *not* argue that Officer Mitchell violated her constitutional right to bodily integrity when he allegedly assaulted her or when he allegedly initiated baseless charges against her. Although the Complaint could be construed to include such claims, the Court assumes, due to Plaintiff's lack of argument to that effect in her Memo-

randum, that Plaintiff has not asserted a § 1983 claim against Officer Mitchell based on this conduct, *i.e.,* his alleged grabbing of her and slamming her against the wall and the baseless charges. If Plaintiff did, in fact, intend for such claims to be raised in Count One, she may seek leave to file an Amended Complaint, *clearly* setting forth a § 1983 claim based on these alleged violations of the United States Constitution.

*and City Council of Pocomoke City,* 745 F.Supp. 1137, 1138 (D.Md.1990)); *Fulson v. City of Columbus,* 801 F.Supp. 1, 6 (S.D.Ohio 1992) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a right to compel a public official to act."). However, Plaintiff may assert an equal protection claim, based on a failure to investigate, if she alleges that her complaints were treated differently than complaints of Caucasian students "because of, not merely in spite of, the harmful [disparate] effect that such treatment would have." *Soper,* 195 F.3d at 852 (quoting *Doe v. Londonderry Sch. Dist.,* 970 F.Supp. 64, 77 (D.N.H.1997)). In the present case, Plaintiff has *not* alleged in her Complaint that Officer Mitchell failed to investigate her complaints of harassment, despite her assertions in her Opposition Memorandum to the contrary (see Doc. #5 at 5). Rather, Plaintiff alleges that she brought the racial harassment to the attention of "the principal, teachers or others" (Compl.¶ 12) and that nothing has been done about Plaintiff's complaints regarding her treatment at school (*id.* ¶ 16). In addition, there are no allegations that Officer Mitchell failed to investigate her complaints because of her race. In sum, Plaintiff has not provided allegations to support her claim that Officer Mitchell received requests to investigate instances of racial harassment, and that he failed to do so because of Plaintiff's race. In addition, there are no allegations that any other City employee or official, as opposed to any employee or official of Defendant Miamisburg Board of Education, engaged in such conduct. Accordingly, Plaintiff's claim against Officer Mitchell, based on his alleged failure to investigate

her complaints of harassment, in contravention of her equal protection rights, must be dismissed. Furthermore, Plaintiff's claims against the City of Miamisburg, based on the failure to investigate, is likewise dismissed.[5]

Turning to Plaintiff's due process claim, the right to receive a public education free from racial discrimination is, without question, protected by the United States Constitution. *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *United States v. Fordice,* 505 U.S. 717, 112 S.Ct. 2727, 120 L.Ed.2d 575 (1992). Plaintiff argues that Officer Mitchell and the City interfered with her property interest in education by fostering racial discrimination at Miamisburg High School. Specifically, she argues that Defendants (1) failed to enact any form of anti-discrimination measures, and (2) failed to investigate reports of discrimination, to punish the offenders or to reprimand administrators who allowed the discrimination to take place.

■ Plaintiff's arguments regarding Officer Mitchell mirror her arguments regarding her equal protection claim. Plaintiff states that "[b]y refusing to investigate the discrimination [at] Miamisburg High School, Defendant Mitchell discriminated against Plaintiff Woods and acted in a manner that allowed other people to discriminate against Plaintiff Woods and interfere with her education." (Doc. #5 at 11–12). As stated, *supra,* Officer Mitchell had no constitutional duty to prevent Plaintiff's harassment by other students nor to investigate her complaints. Accordingly, Plaintiff cannot state a claim against him, based on these alleged failures, for interference with her property right in a non-discriminatory education.

---

**5.** Because Plaintiff's Memorandum in Opposition implies that she intended to allege that Officer Mitchell failed to investigate her complaints of inappropriate or illegal conduct be-

cause of her race, Plaintiff may seek leave to file an Amended Complaint, *clearly* setting forth such a claim under § 1983.

■ The City asserts that Plaintiff's claim against it must be dismissed, because it did not purposefully act to cause a constitutional violation, and that the Pride Handbook belongs to Defendant Board of Education, not to the City. As emphasized in its Reply Memorandum (Doc. # 8), the City of Miamisburg is not the provider of public education at Miamisburg High School. Rather, public education is provided by Defendant Miamisburg Board of Education. As stated by the Ohio Supreme Court, a "board of education is charged with the management and control of the public schools in its district and is vested with authority to make such rules and regulations as it deems necessary for its government." *Greco v. Roper*, 145 Ohio St. 243, 61 N.E.2d 307 (1945).

Section 3, Article VI of the Ohio Constitution states that "[p]rovision shall be made by law for the organization, administration and control of the public school system of the state * * * provided, that each school district * * * shall have the power by referendum vote to determine for itself * * * the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts." (Emphasis added.) R.C. 3313.20 provides, in pertinent part, that "[t]he board of education shall make such rules as are necessary for * * * the government of its * * * pupils of its schools * * *." R.C. 3313.47 declares, in part, that "[e]ach * * * local board of education shall have the management and control of all the public schools * * * in its respective district. * * *" *In re Suspension of Huffer from Circleville High Sch.*, 47 Ohio St.3d 12, 14, 546 N.E.2d 1308, 1311 (Ohio 1989). Because the City does not provide education to Plaintiff, her claim against the City of Miamisburg for violation of her property right to a discrimination-free public education is dismissed.

In summary, Plaintiff has failed to state a claim against either Officer Mitchell or the City of Miamisburg for violation of her Fourteenth Amendments rights. Because no constitutional violations by these Defendants has been alleged, the Court need not address whether Plaintiff adequately pled facts to support municipal liability under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), or the absence of qualified immunity for Officer Mitchell.[6]

---

6. Assuming, *arguendo*, that constitutional violations have been alleged, the City asserts that it is not responsible for any such violations, arguing that Plaintiff has failed to satisfy the requirements of *Monell*. In her response, Plaintiff recognizes that she ultimately must demonstrate that her constitutional injury was caused by an unconstitutional custom or policy of the municipality. She argues, pursuant to *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986), that the City may be liable because either (1) actions were taken by those with final authority for making a decision for the municipality or (2) the City established a policy of inadequate training or supervision. Plaintiff asserts that the City of Miamisburg may be held liable under the first theory of municipal liability, on the ground that Officer Mitchell, had been delegated final authority by the City when he failed to discipline the students who harassed Plaintiff and when he accused Plaintiff of inappropriate conduct. Plaintiff further asserts that the City may be held liable under the second theory, arguing that the City

either failed to train or improperly train [Principal James] Ingham and Defendant Mitchell, as final decision making authorities in the City of Miamisburg, to properly investigate discrimination issues, effectively and fairly discipline high school students, and reasonably prevent physical and verbal abuse among students. All of these issues are fundamental to the everyday workings of a high school, and, therefore, indispensable to a quality education.

(Doc. # 5 at 7). Plaintiff's arguments would be unavailing. She has failed to allege that

3. *Plaintiff's § 1981 Claim (Portion of Count One)*

■ Section 1981 prohibits intentional race discrimination in the making and enforcing of contracts with both public and private actors. 42 U.S.C. § 1981. The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b); *Christian v. Wal–Mart Stores, Inc.,* 252 F.3d 862, 868 (6th Cir.2001). Thus, to be viable, Plaintiff's claim must be based on a contractual relationship.

In their Motion, the City and Officer Mitchell assert that Plaintiff's claim for violation of 42 U.S.C. § 1981 must be dismissed, because she has not alleged that a contractual relationship exists. They further argue that Plaintiff has failed to allege that the City violated her right to make a contract, or that such a violation occurred as a result of a policy or custom. In response, Plaintiff argues that an implied contract exists between her and the City of Miamisburg, based on her mother's payment of school taxes to the City. She argues that taxpayers agreed to pay school taxes when they buy property in Miamisburg, and the City agreed to operate public schools when it became officially recognized as a city.

Although Plaintiff asserts that she has a right to a public education from the City of Miamisburg, the Court has found no authority, and Plaintiff has not cited to any, that suggests that the City's provision of public education to its taxpayers is based on a contractual relationship. As stated by Magistrate Judge Merz in his Report and Recommendations to Judge Rose in *Smith v. Miller,* Case No. C–3–02–184, Southern District of Ohio, Western Division at Dayton, in which Judge Merz likewise addressed whether a student in the City of Miamisburg could assert a § 1981 claim:

> Certainly the relationship does not look like a contractual one: the obligation to send one's children to school exists regardless of whether or not one pays taxes; the obligation to pay taxes arises, as Plaintiff herself admits (*Id.*), whether or not one has school-age children. Finally, even if there were an implied contract relationship between Plaintiff and the Board of Education, there would not be one between her and Miller, Mitchell, or Miamisburg.

(Doc. # 14). This Court agrees with Judge Merz's reasoning, and concludes that Plaintiff's § 1981 claim must be dismissed for failure to state a claim upon which relief may be granted.

B. *Plaintiff's Claim for Violation of the Ohio Constitution (Count Two)*

■ In Count Two of her Complaint, which is entitled Violation of Constitution of Ohio, Plaintiff alleges that Defendants have deprived her of her right to equal protection, which is secured by Article I, Section 2, of the Ohio Constitution,[7] on the basis of race.[8] Defendants assert that

---

Officer Mitchell had final authority for his alleged actions. In addition, her Complaint is devoid of allegations that Officer Mitchell was inadequately trained or supervised. Accordingly, Plaintiff's claims against the City would also be dismissed for failure to allege facts to support municipal liability.

**7.** Article I § 2 of the Ohio Constitution provides, in pertinent part:

All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly.

**8.** In paragraph 29, Plaintiff expands her claim, alleging that Defendants' actions violate 42 U.S.C. § 1981 and the United States and Ohio Constitutions, as well as constitut-

Count Two must be dismissed on the same grounds that her § 1983 claims must be dismissed. Plaintiff has not responded to Defendants' arguments, and the Court will assume that she likewise is relying on her arguments regarding her § 1983 claims.

The Ohio Supreme Court has repeatedly recognized that the equal protection provisions in the Ohio Constitution and the United States Constitution are equivalent. *Roseman v. Firemen and Policemen's Death Ben. Fund,* 66 Ohio St.3d 443, 613 N.E.2d 574 (Ohio 1993); *State ex rel. Dayton Fraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd.,* 22 Ohio St.3d 1, 6, 488 N.E.2d 181 (1986); *Kinney v. Kaiser Aluminum,* 41 Ohio St.2d 120, 122, 322 N.E.2d 880 (1975) ("The limitations placed upon governmental action by the Equal Protection Clauses of the Ohio and United States constitutions are essentially identical."). Because the Court has concluded that Plaintiff has not stated equal protection claims against Officer Mitchell and the City of Miamisburg under the Fourteenth Amendment to the United States Constitution, it likewise concludes that no viable claims exist under Article I, Section 2, of the Ohio Constitution. Defendants' Motion to Dismiss Count Two is SUSTAINED.

### C. *Plaintiff's Claim for Violation of Ohio Public Policy (Count Three)*

■ In Count Three of her Complaint, Plaintiff alleges that all Defendants violated the "Pride" Handbook and engaged in discriminatory behavior by their deliberate indifference to and ratification of Officer Mitchell's alleged behavior, *i.e.,* his failure to protect her, to investigate fully her allegations of wrongful conduct by others and his alleged assault of her. She asserts that this conduct constitutes a violation of Ohio's strong public policy against discrimination in public places. In their Motion, the City and Officer Mitchell assert that this claim must be dismissed, because Ohio law does not recognize a "common law discrimination" claim. They further argue that there is no indication of how this tort exposes the City of Miamisburg to liability. Plaintiff responds that Ohio has a long-standing public policy against discrimination, and that the statutes which prohibit discrimination merely illustrate this larger public policy.

Without doubt, Ohio has a strong public policy against racial discrimination generally and in public places specifically. Ohio Rev.Code § 4112.02 establishes that it is unlawful to engage in discrimination on the basis of race in such areas as employment, housing and loans, and public accommodations. However, Plaintiff has not cited, and this Court has not found, any case law which establishes a general common law claim for tortious violation of public policy. To the contrary, although Ohio recognizes claims for discharge in violation of public policy, *see Greeley v. Miami Valley Maintenance Contrs., Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), Ohio courts have repeatedly rejected attempts to expand that claim beyond the discharge of an at-will employee. *Strausbaugh v. Ohio Dept. of Transp.,* 150 Ohio App.3d 438, 782 N.E.2d 92 (10th Dist.2002) ("*Greeley* [ ] claims are limited to employee-at-will situations that involve discharge or disciplinary action."); *Bell v. Cuyahoga Community College,* 129 Ohio App.3d 461, 465, 717 N.E.2d 1189 (8th Dist.1998) (no common law claim for harassment in violation of public policy); *see also Evans v. Toys R Us, Inc.,* 2000 WL 761803 (6th Cir. June 2, 2000) ("there is no Ohio precedent autho-

ing an impairment of contract under Ohio law. Because these claims essentially restate the claims in Count One, the Court will not address them separately, and they are dismissed for the reasons previously set forth.

rizing the federal courts to extend the public policy tort to a failure to promote claim."); *Bools v. General Elec. Co.,* 70 F.Supp.2d 829, 832 (S.D.Ohio 1999) ("[O]ur review of Ohio law finds no case extending the public policy tort to claims involving a wrongful failure to hire or retaliation."). In the absence of any authority by Ohio courts which recognize the general tort of violation of Ohio's public policy against discrimination, Plaintiff's claim for violation of such a tort must be dismissed for failure to state a claim upon which relief may be granted. Defendants' Motion to Dismiss Count Three is SUSTAINED.

### D. *Plaintiff's Claim for Assault and Battery (Count Four)*

Plaintiff's claim of assault and battery, set forth in Count Four of her Complaint, appears to contain two distinct type of claims. *First,* Plaintiff alleges that Officer Mitchell assaulted her by grabbing her (Compl.¶ 36). *Second,* she alleges that Officer Mitchell failed to investigate fully the allegations regarding the circumstances giving rise to his grabbing of her (*id.* ¶ 36), *i.e.,* the fight to which Plaintiff allegedly was a witness (see *id.* Ex. B), and that he had a duty to follow the procedures established by the City of Miamisburg for investigating inappropriate or illegal conduct (*id.* ¶ 38). She further alleges that Mitchell covered-up his wrongful conduct by charging Plaintiff with disorderly conduct, resulting in her being sent to Juvenile Court on baseless allegations (*id.* ¶ 37, ¶ 39). Plaintiff alleges that Officer Mitchell acted with deliberate indifference to the polices and procedures set forth in the Miamisburg Police Department Manual and the "Pride" Handbook.

Defendants assert numerous bases for dismissal of Plaintiff's state law assault and battery claim. *First,* Officer Mitchell argues that Plaintiff has only alleged that he "grabbed" her, and that she has failed to allege that such actions were done with the intent to harm her or that she suffered any harm. *Second,* Officer Mitchell argues that he is immune from liability, pursuant to Ohio Rev.Code § 2744.03. *Third,* the City of Miamisburg asserts that, because assault and battery is an intentional tort, the exceptions to municipal immunity, as set forth in Ohio Rev.Code § 2744.02(B)(1)-(5), do not apply, and it remains immune from liability. *Fourth,* Defendants assert that the allegations dealing with Officer Mitchell's failure to investigate, failure to follow proper procedures, and his alleged cover-up of his assault are irrelevant to a claim of assault and battery.

#### 1. *Elements of an Assault and Battery Claim*

In Ohio, an assault is an unlawful offer or attempt, coupled with a present ability, to inflict an injury upon the person of another. *Daniel v. Maxwell,* 176 Ohio St. 207, 208, 198 N.E.2d 657 (Ohio 1964) (citing 5 Oh Jur (2d), Assault and Battery § 2). A battery occurs when a person acts intending to cause a harmful or offensive contact, and when a harmful contact results. *Love v. City of Port Clinton,* 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (Ohio 1988) (citing Restatement (Second) of Torts § 13 (1965)). Contact which is offensive to a reasonable sense of personal dignity is offensive contact. *Id.*

Addressing Defendant's first and fourth arguments together, in the present case, Plaintiff has alleged facts that are sufficient to state a claim for assault and battery. As noted by Defendants, Plaintiff has alleged that Officer Mitchell "assaulted" her by grabbing her (Compl.¶ 36). In Mrs. Townsend's letter of March 19, 2002, to the school, which is attached to the Complaint, Plaintiff's mother writes that "Officer Mitchel [sic] then grabbed SoRel and slammed her against the wall."

(Compl.Ex.B). Construing these allegations in the light most favorable to her, Plaintiff has alleged that Officer Mitchell grabbed her and slammed her against a wall at school. Certainly being slammed against a wall would be offensive to a reasonable sense of personal dignity. In addition, Plaintiff's allegations can easily be construed as alleging that Officer Mitchell acted with the intent to grab her and slam her against the wall. It is hard to image that such actions could be done accidently. Accordingly, Plaintiff has stated a claim for assault and battery against Officer Mitchell.

■ As for Plaintiff's allegations that Officer Mitchell failed to investigate her complaints of discrimination, failed to follow proper procedures, and allegedly covered-up of his assault by instituting baseless charges against her, the Court agrees with Defendants that Plaintiff has not thereby stated a claim for assault and battery. Although such allegations may lead to other tort claims, such as negligent training or malicious prosecution, there are no allegations in the Complaint that Officer Mitchell attempted to cause a harmful or offensive touching of Plaintiff when he allegedly committed those acts or that such a touching occurred. Accordingly, even accepting those allegations as true and construing them in the light most favorable to her, the allegations do not support an assault and battery claim. Accordingly, Plaintiff's state law claim of assault and battery, based on her allegations that Officer Mitchell failed to investigate her complaints of discrimination, failed to follow proper procedures, and allegedly covered-up of his assault by instituting baseless charges against her, must be dismissed for failing to state a claim upon which relief may be granted.

### 2. *Immunity Under Ohio Rev.Code § 2744*

■ Since Plaintiff has pled the elements of an assault and battery claim, based on Officer Mitchell's grabbing her, the Court must evaluate whether Officer Mitchell and the City of Miamisburg are exempt from liability for that conduct, pursuant to Ohio Rev.Code § 2744. A complaint is vulnerable to a motion to dismiss for failure to state a claim upon which relief can be granted if it alleges facts that constitute a defense to the claim asserted. *Gutter v. Dow Jones, Inc.*, 22 Ohio St.3d 286, 490 N.E.2d 898 (Ohio 1986); *Simpson v. White*, 1997 WL 86313 (Clermont Cty. Feb. 24, 1997). "Likewise, in a suit against an employee of a political subdivision, a motion to dismiss is proper where a complaint contains no factual allegations that would remove the employee from the immunity afforded by Ohio Rev.Code Ann. 2744." *Simpson* 1997 WL 86313, at *1 (citing *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 653 N.E.2d 1186 (Ohio 1995)).

### a. *City of Miamisburg*

■ As a general rule, political subdivisions and their employees are not liable for injury caused by any action of the subdivision or its employees in connection with a governmental function. Ohio Rev. Code § 2744.02(A)(1). Municipal corporations are statutorily defined as political subdivisions. Ohio Rev.Code § 2744.01(F). The provision of police services is a governmental function, *id.* § 2744.01(C)(2)(a).

Ohio Rev.Code §§ 2744.02 and 2744.03 provide exceptions to the general grant of immunity. Ohio Rev.Code § 2744.02(B) provides that political subdivisions, such as the City of Miamisburg, may be liable for injuries caused by: (1) operation of a motor vehicle (with some exceptions); (2) negligent performance of proprietary func-

tions; (3) failure to keep public roads in repair and free from nuisance; and (4) negligence of an employee that occurs within or on the grounds of buildings used in performing governmental functions. Further, political subdivisions may be liable if liability is imposed by statute. Ohio Rev.Code § 2744.02(B)(5). Section 2744.03 provides additional defenses and immunities when immunity is divested under § 2744.02(B). Section 2744.03(A) states, in pertinent part,

> (2) The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law, or if the conduct of the employee involved that gave rise to the claim of liability was necessary or essential to the exercise of powers of the political subdivision or employee.
>
> (3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement power by virtue of the duties and responsibilities of the office or position of the employee,
>
> (5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources, unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

Ohio Rev.Code §§ 2744.03(A)(2), (3), (5).

Plaintiff argues that the City cannot avail itself of statutory immunity under section 2744, because it is not being sued as an employer. Plaintiff's argument is without merit. Ohio courts have consis-

tently held that political subdivisions, particularly those acting in a governmental capacity, are exempt from intentional tort claims, reasoning that Ohio Rev.Code § 2744.02(B) does not provide a specific exception for intentional torts. *Sabulsky v. Trumbull Cty.*, 2002 WL 31886686 (Ohio App. 11th Dist. Dec. 27, 2002); *Culberson v. Doan*, 125 F.Supp.2d 252, 282 (S.D.Ohio 2000) ("we find that there are no statutory exceptions to political subdivision immunity for intentional torts, such as intentional infliction of emotional distress."); *see Wilson v. Stark Cty. Dept. of Human Servs.*, 70 Ohio St.3d 450, 452, 639 N.E.2d 105, 107 (Ohio 1994) ("There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress as alleged in this case."); *Hubbard v. Canton City Sch. Bd. of Educ.*, 97 Ohio St.3d 451, 453, 780 N.E.2d 543, 546 (Ohio 2002); *Wynn v. Butler Cty. Sheriff's Dept.*, 1999 WL 160942 (Ohio App. 12th Dist. Mar 22, 1999) (county has statutory immunity for false imprisonment claim). The fact that the City of Miamisburg allegedly acted as the provider of police services (a governmental function), rather than as an employer, does not affect the Court's analysis. The Court concludes that, pursuant to Ohio Rev.Code § 2744.02(B), the City of Miamisburg is not divested of its cloak of immunity for Plaintiff's intentional tort claim of assault and battery. Accordingly, Plaintiff's claim against the City for assault and battery must be dismissed.

### b. *Officer Mitchell*

Turning to Plaintiff's claim against Officer Mitchell, Ohio Rev.Code § 2744.03(A)(6) limits the immunity an employee of a political subdivision. It provides, in pertinent part, that an employee is immune from liability unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Liability is expressly imposed upon the employee by a section of the Revised Code.

*Id.* § 2744.03(A)(6).

In the present case, Plaintiff has not alleged facts to indicate that Officer Mitchell was acting outside the scope of his employment when he allegedly assaulted her. To the contrary, the Complaint alleges that Officer Mitchell was assigned to Miamisburg High School and is sued as an agent of the school and the City (Compl.¶¶ 7–8). As such, Mitchell does not lose his statutory immunity under Ohio Rev.Code § 2744.03(A)(6)(a). Plaintiff has not cited to any statute which expressly provides for liability for the actions allegedly performed by Officer Mitchell. Thus, the exception under Ohio Rev.Code § 2744.03(A)(6)(c) also does not apply. Accordingly, the remaining issue is whether Plaintiff has pled facts indicating that Officer Mitchell's acts were with "malicious purpose, in bad faith, or in a wanton or reckless manner," within the meaning of § 2744.03(A)(6)(b).

 Under Ohio law, " '[m]alicious' means 'indulging or exercising malice'; harboring ill will or enmity." *Teramano v. Teramano,* 6 Ohio St.2d 117, 118, 216 N.E.2d 375, 377 (Ohio 1966). "Furthermore, 'malice' can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Jackson v. Butler Cty. Bd. of City Comm'rs,* 76 Ohio App.3d 448, 453–54, 602 N.E.2d 363, 367 (Butler Cty.1991) (citing *Bush v. Kelley's, Inc.,* 18 Ohio St.2d 89, 247 N.E.2d 745 (Ohio 1969)). The Ohio Supreme Court has defined "bad faith" to require more than negligence or bad judgment. *Slater v. Motorists Mut.*

*Ins. Co.,* 174 Ohio St. 148, 187 N.E.2d 45 (Ohio 1962)(syllabus). Rather, "bad faith" requires "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." *Id.* An individual is reckless "if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Thompson v. McNeill,* 53 Ohio St.3d 102, 104–5, 559 N.E.2d 705, 708 (Ohio 1990), quoting 2 Restatement of the Law 2d, Torts § 500 at 587 (1965).

 In their Motion, Defendants assert that Plaintiff has failed to allege that Officer Mitchell acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. They argue that his alleged failure to investigate and to follow proper procedures do not constitute acts taken with malicious purpose. In response, Plaintiff also focuses on Officer Mitchell's refusal to help investigate her claims of discrimination. She states:

Because Defendant Mitchell's refusal to act was interpreted by Plaintiff's harassers as a free license to continue their activity, Defendant Mitchell's refusal to act qualifies as an exception to immunity under [R.C. 2744.03(A)(6)(b) ]. This same refusal to act intentionally caused harmful or offensive contact to Plaintiff, by other students, that resulted in offensive contact.

(Doc. # 5 at 17).

As stated, *supra,* Plaintiff's claim of assault and battery, based on Officer Mitchell's failure to properly investigate her complaints must be dismissed and, therefore, Officer Mitchell need not avail him-

self of statutory immunity for those claims. However, construing the Complaint in the light most favorable to her, Plaintiff has made allegations that, if true, make questionable whether Officer Mitchell is immune from liability under Ohio Rev.Code § 2744.03(A)(6), based on his grabbing of Plaintiff. In particular, Plaintiff alleges that she is a petite individual and that Officer Mitchell grabbed her and slammed her against a wall. Although the Complaint does not use the terms "malicious" or "reckless", such conduct could be construed as unnecessarily forceful, in light of the fact that Plaintiff is a petite, unarmed student. In other words, based on these allegations, the Complaint may be construed to indicate that Officer Mitchell acted with malicious purpose, bad faith, or in a wanton or reckless manner. Accordingly, based on the face of the Complaint, the Court cannot conclude that Officer Mitchell is immune from liability, pursuant to Ohio Rev.Code § 2744.03(A)(6), for allegedly grabbing and slamming Plaintiff against a wall.

In summary, Plaintiff's claim for assault and battery against the City of Miamisburg is dismissed in its entirety, due to statutory immunity for intentional torts. Plaintiff's assault and battery claim against Officer Mitchell is likewise dismissed, for failing to state a claim upon which relief may be granted, to the extent that it is based on his alleged failure to investigate her complaints of discrimination, failure to follow proper procedures, and the cover-up of his assault by instituting baseless charges against her. However, Defendants' Motion to Dismiss Plaintiff's assault and battery claim against Officer Mitchell, arising out of his grabbing her and slamming her against a wall, is OVERRULED.

For the foregoing reasons, Defendants' Motion to Dismiss, pursuant to Fed. R.Civ.P. 12(b)(6), is SUSTAINED in PART and OVERRULED in PART. Counts One, Two, and Three are dismissed, in their entirety, as to both Officer Mitchell and the City of Miamisburg. Plaintiff's assault and battery claim is dismissed as to the City of Miamisburg. Plaintiff's assault and battery claim against Officer Mitchell is likewise dismissed, to the extent that it is based on his alleged failure to investigate her complaints of discrimination, failure to follow proper procedures, and the cover-up of his assault by instituting baseless charges against her. Plaintiff's assault and battery claim against Officer Mitchell, arising out of his grabbing her and slamming her against a wall, remains. In summary, the City of Miamisburg is dismissed from this litigation entirely. Plaintiff's assault and battery claim against Officer Mitchell, based on his grabbing Plaintiff and slamming her against a wall (portion of Count Four), is the sole remaining claim against him. The Court further notes that Defendants Miamisburg City Schools and Miamisburg Board of Education have not filed any motion to dismiss and, therefore, Plaintiff's claims against them also remain.

Plaintiff *may seek leave* to file an Amended Complaint, pursuant to the strictures of Rule 11, clearly setting forth § 1983 claims, based on Officer Mitchell's alleged grabbing of Plaintiff and slamming her against the wall, his institution of baseless charges against her, and his failure to investigate her complaints of inappropriate or illegal conduct because of her race.

The stay of proceedings, which was entered by the Court on December 5, 2002 (Doc. # 11), is rescinded, and the Preliminary Pretrial Conference Order of October 31, 2002 (Doc. # 12), as amended on November 25, 2002 (Doc. # 13), is in effect.