*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0154p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GARY KUSENS,

>
> *Plaintiff-Appellant/*
> *Cross-Appellee,*

Nos. 04-3570/3682

> *v.*
>

PASCAL COMPANY, INC., et al.,

> *Defendants-Appellees/*
> *Cross-Appellants.*

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 02-00879—John R. Adams, District Judge.

Argued: July 28, 2005

Decided and Filed: May 9, 2006

Before: ROGERS and SUTTON, Circuit Judges; ROSEN, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Gregory A. Gordillo, LAW OFFICES OF GREGORY A. GORDILLO, Cleveland, Ohio, for Appellant. Robert N. Stein, Cleveland, Ohio, for Appellees. **ON BRIEF:** Gregory A. Gordillo, LAW OFFICES OF GREGORY A. GORDILLO, Cleveland, Ohio, Ann-Marie Ahern, SIMON LAW FIRM, Cleveland, Ohio, for Appellant. Robert N. Stein, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

ROSEN, District Judge.

## I. *INTRODUCTION*

Plaintiff Gary Kusens appeals from the District Court's entry of judgment as a matter of law in favor of the Defendants in this diversity action stemming from the termination of Plaintiff's employment. After a full trial on the merits, the District Court granted the defendants' motion for judgment as a matter of law on Kusens' statutory age discrimination and retaliation claims, but

---

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

denied the motion with respect to Plaintiff's Ohio public policy claim. The public policy claim was sent to the jury, which returned a verdict in favor of Kusens. Defendants then renewed their motion for judgment as a matter of law on the public policy claim and the District Court granted the renewed motion finding that Plaintiff had failed to establish at trial that he was an at-will employee, which the court held to be an essential element of a public policy claim under Ohio law. For the reasons that follow, we AFFIRM the District Court's decisions.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

### A. *FACTUAL BACKGROUND*

Plaintiff Gary Kusens was employed by Defendant Pascal Company, Inc. ("Pascal") from 1991 until October 1, 2001, when his position was eliminated. At that time, Plaintiff was 54 years old.

Kusens began his employment with Pascal as a "Manufacturer's Sales Representative" or "Territory Representative," responsible for selling dental products and developing accounts in his territory, which included Chicago, Milwaukee and other areas in the Midwest. In 1999 Plaintiff became a "Regional Sales Manager" which entailed additional supervisory and managerial duties. His base salary increased and his commissions were determined as a fixed percentage of nationwide Pascal sales.

During the latter part of the 1990s, however, Pascal's nationwide sales began to decline. To alleviate the company's financial difficulties, Pascal obtained funding from CAPCO Financial. CAPCO, however, conditioned the funding on Pascal cutting expenses by eliminating personnel. Pascal complied with CAPCO's requirement and eliminated two of its four Regional Sales Managers -- Plaintiff Kusens and Jim Thorndale.

Two of the people responsible for the elimination of Plaintiff's position were Defendant Benjamin Paschall, the owner and CEO of the company, and Defendant Janet Siwinski, Pascal's Vice President of Sales and Marketing who was also Plaintiff's direct supervisor. At the time of the termination of his employment, Plaintiff was the oldest of the four Regional Sales Managers at Pascal, and Jim Thorndale, who was terminated the same day as Plaintiff, was the second oldest. The youngest two Sales Managers were retained. Following his termination, Plaintiff filed suit contending that he was fired because of his age and not because of Pascal's financial strategy.

To prove his claims of age discrimination and wrongful discharge in violation of public policy, Plaintiff offered as evidence the testimony of a number of Pascal employees who testified that both Benjamin Paschall and Janet Siwinski harbored ageist attitudes, both in general, and with regard to Mr. Kusens, specifically.

Eugene Babos, Pascal's former president, testified that Benjamin Paschall repeatedly stated that "when you [are] over 50, you can't sell . . . you are too old to be a salesman." William "Sam" Wiebe, one of the retained Regional Sales Managers, testified that Defendant Paschall told him that he did not like keeping older people because "older people were expensive. . . , that older people kind of drove up prices and insurance."

Wiebe also testified that Janet Siwinski made a number of comments directed at Plaintiff including "Gary, you're acting old. We need more energy. We need younger people on board. We need some young guns. . . . We don't need old people out in sales anymore. We need to get younger," and specifically stated to Wiebe, "That Kusens is sure acting like an old man." Wiebe further testified that, after Plaintiff was terminated, and Wiebe still retained, Siwinski told him that he was "the new way of doing business; out with the old in with the new." Plaintiff Kusens also

testified that Siwinski called him "old" on a number of occasions; that she would tell him "[t]hat I was acting old. Stop acting old. You are old."

Plaintiff also offered as evidence that age motivated the decision to terminate him, a memorandum written by Defendant Siwinski to Salli Stretti, a Sales Consultant with Holt Dental, in which Siwinski stated:

> We had to release Jim and Gary October 1. . . . The stress was pretty darn bad, let me tell you!. . . . Anyway,. . . [w]e did find a young man for the Chicago/Milwaukee territory. Steve Zielinski, a 24-year-old pharmaceutical rep. It sure is a lot more fun to hire than fire, and I just love the energy and enthusiasm of young people who want to work instead of oldies who want a free ride. . . .

## B.  PROCEDURAL BACKGROUND

Plaintiff originally filed his four-count complaint on March 29, 2002 in the Cuyahoga County, Ohio Court of Common Pleas alleging claims of age discrimination under Ohio Revised Code § 4112.02(A) against his former employer, Defendant Pascal Company Inc. (Count I), the company's owner, Benjamin Paschall (Count II), and his former supervisor, Janet Siwinski (Count III). Plaintiff also alleged a common law claim against Pascal for wrongful discharge in violation of Ohio public policy (Count IV). Defendants removed the case to the United States District Court for the Northern District of Ohio on the basis of diversity jurisdiction.[1] Following removal, Defendant Pascal filed a Counterclaim alleging that Plaintiff had breached his employment obligations to Pascal through the fraudulent use of company funds, equipment, and resources for purposes unrelated to his employment. In response to the Counterclaim, Kusens filed a "Supplement" to his Complaint, adding a state-law retaliation claim under O.R.C. § 4112.02(I) alleging that Pascal filed the Counterclaim to retaliate against him for filing his age discrimination claims.

After the close of discovery, Defendants moved for summary judgment on all of Plaintiffs' claims. Defendants argued that Plaintiff failed to make out a *prima facie* claim of age discrimination or of violation of public policy under either a direct evidence approach or under the *McDonnell Douglas* standard. Defendants further argued that even if Plaintiff had made out a *prima facie* case, Defendants offered a non-discriminatory reason for their actions, i.e., economic necessity and a reduction-in-force, and Plaintiff failed to establish that the proffered reason was pretextual. With respect to the retaliation claim, Defendants argued that § 4112.02(I) applies only to adverse "employment" actions and, since Plaintiff was no longer employed by Pascal when the Counterclaim was filed, he could not make out a retaliation claim under the statute as a matter of law.

On October 31, 2003, the District Court entered an Opinion and Order denying Defendants' motion for summary judgment, finding that issues of material fact existed with respect to whether Defendants engaged in age discrimination in violation of Ohio law. Additionally, the District Court found that genuine issues of material fact existed with respect to whether Defendants' filing of a Counterclaim against Kusens constituted an unlawful retaliatory act. Accordingly, the case proceeded to trial before a jury on November 3, 2005.

After the close of proofs, Defendants made an oral motion for judgment as a matter of law ("JMOL") on all of Plaintiff's claims on a variety of bases. First, Defendants argued that Plaintiff had failed to present direct evidence of discrimination and had failed to meet the *McDonnell Douglas* test. Defendants further argued that Plaintiff had failed to show pretext. Second,

---

[1] Pascal is a Washington corporation and has its principal place of business in that state. The individual defendants are also residents of the State of Washington.

Defendants argued that Pascal Company is not an "employer" covered by the Ohio Civil Rights statute because it did not have four or more employees within the State of Ohio. The court agreed with Defendants on this last point and, accordingly, granted Defendants' motion with regard to Plaintiff's claims of discrimination and retaliation under the civil rights statute.

The court then asked counsel to address the issue of whether Plaintiff's remaining claim under Ohio public policy should remain and be submitted to the jury. Defense counsel argued that the public policy claim was not argued nor even referenced in Plaintiff's opening statement or at any other time during the course of trial and, therefore, the claim should be dismissed in its entirety. Plaintiff's counsel countered that the claim should be presented to the jury because

> we certainly made reference to all the pertinent facts which gave rise [to] all of the claims pled. . . including the wrongful discharge and policy. The fact that we didn't identify the legal theory, public policy, is no basis to have the direct[ed] verdict. The facts stated during the open[ing] statement was [sic; were] sufficient to state the claim.

Although the District Court indicated that it believed defense counsel was correct in that there had been no argument regarding the public policy claim presented during trial and noted defense counsel's exception for the record, it nonetheless ordered that this one claim be submitted to the jury, "leav[ing] th[e] matter to be reviewed by perhaps others at a later time."[2]

On November 7, 2003, the jury returned a verdict in favor of the Plaintiff on his public policy claim, and awarded him $950,000 in damages. J.A. p. 487.[3] Defendants timely filed a Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for New Trial or Remittitur, arguing that "[d]uring trial the Plaintiff as a matter of law failed to establish a cause of action sounding in wrongful discharge in violation of Ohio public policy." Defendants detailed this argument in their Memorandum in support of the motion pointing out that "Plaintiff failed to meet his burden to plead and prove all the elements necessary to establish a cause of action for wrongful discharge in violation of Ohio public policy," and specifically enumerated three deficiencies in Plaintiff's proofs:

> 1.    The Plaintiff failed to plead and prove that he was an employee at will;
>
> 2.    The uncontradicted evidence at trial established that the Plaintiff's position was eliminated for overriding business considerations; and
>
> 3.    The Plaintiff failed to establish a causal link between what he claimed was evidence of age based animus and the complained of employment decision.

The District Court granted Defendants' renewed motion for JMOL in an Order and Decision entered February 23, 2004.[4] Specifically, the court held that

> Pascal is entitled to judgment as a matter of law on the ground that Kusens failed to adequately plead and prove at trial his claim for wrongful discharge in violation of public policy.

---

[2] However, the District Court noted that the public policy claim was pled in Plaintiff's Complaint against only Defendant Pascal Company. Therefore, it found no cause of action remaining against individual defendants Siwinski and Paschall. Accordingly, only the claim against Defendant Pascal Company was submitted to the jury.

[3] The jury also found in favor of Plaintiff and against Defendant Pascal Company on Pascal's counterclaim for fraud.

[4] The February 23, 2004 Order and Decision is silent as to Defendant's alternative motion for new trial.

2/23/04 Order and Decision, p. 1.  The court explained the precise basis for its decision:

> Under Ohio law, recovery for tortious violation of public policy is available only to at-will employees.  Kusens neglected to plead or present any evidence that he was an at-will employee when Pascal terminated his position.  Thus, the jury's verdict cannot stand.

*Id.* at 1-2.[5]  Accordingly, Judgment was entered in favor of Defendants and against Plaintiff Kusens.

Plaintiff subsequently filed a Fed. R. Civ. P. 59(e) Motion to Alter Judgment, or in the Alternative, for a New Trial pursuant to Fed. R. Civ. P. 59(a) and 50(c)(2), asking the court to reinstate the jury's verdict or in the alternative, to vacate its judgment and order a new trial on the sole issue concerning whether Mr. Kusens was an employee at-will during his employment with Pascal.  The District Court denied both the Rule 59(e) motion and the alternative new trial motion in an April 12, 2004 Order and Decision.  Plaintiff timely filed a Notice of Appeal.

On appeal, Plaintiff argues (1) that the District Court erred in granting Defendants' renewed motion for JMOL because Defendants waived the argument that Kusens failed to produce evidence of at-will employment by their failure to raise this issue in their pre-verdict motion for judgment as a matter of law; (2) that even if the issue was not waived, employment at-will is not a requirement for Ohio public policy claims; (3) that if there is a requirement of at-will employment, the presumption of at-will employment should apply in absence of evidence to the contrary; (4) that even if evidence should have been produced by Plaintiff on the issue of his status as an at-will employee, the District Court should have granted a new trial limited to the issue of Kusens' employment status; (5) that the District Court erred in granting Defendants' pre-verdict motion for judgment as a matter of law on Kusens' statutory retaliation claim because the anti-retaliation provision of the Ohio Civil Rights statute applies to "any person," not just to employers; and (6) the District Court erred in granting judgment as a matter of law to the individual defendants on Kusens' discrimination claims on the grounds that the individual defendants were not employed by an "employer" under the Ohio statute.

In response Defendants argue that this Court lacks jurisdiction to hear this appeal because, when it ruled on Defendants' renewed motion for judgment as a matter of law, the District Court failed to rule on Defendants' alternative motion for new trial and that, even if this Court does have jurisdiction, Kusens waived his right to object to the District Court's decision to grant Defendants' pre-verdict motion for judgment as a matter of law on Kusens' statutory discrimination and retaliation claims.  Finally, Defendants cross-appeal arguing that the District Court should have granted their pre-trial motion for summary judgment.

## III. *ANALYSIS*

### A.    *THE COURT HAS JURISDICTION TO HEAR THE INSTANT APPEAL*

As an initial matter, we will address Defendants' argument that this Court lacks jurisdiction to entertain this appeal.  Defendants' argument is predicated on the fact that although the District Court ruled on Defendants' Renewed Motion for Judgment as a Matter of Law, it never expressly ruled on Defendants' Alternative Motion for New Trial or Remittitur.  Defendants contend that because the District Court  neither denied nor conditionally granted their Alternative Motion for a

---

[5] Because it found Kusens' failure to plead and prove at-will employment to be dispositive, the District Court found that it was not necessary to address Defendant's other arguments.  *See* 2/23/04 Order and Decision, p. 5 n.2.

New Trial or Remittitur as required by Fed. R. Civ. P. 50(c),[6] there has not been a "final decision" in this case such that jurisdiction over this matter is conferred on the Court of Appeals under 28 U.S.C. § 1291.[7]

In support of their argument, Defendants rely upon *Inge v. Rock Financial Corp.*, 281 F.3d 613 (6th Cir. 2002), in which we stated that "[a] district court's decision is 'final' for purposes of § 1291 when it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 617 (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)). However, neither *Inge*, nor *Catlin*, for that matter, involved a question of appellate court jurisdiction when a renewed motion for JMOL is joined with an alternative motion for new trial but only the motion for JMOL is expressly ruled upon by the lower court. *Inge* addressed the finality issue only with regard to the timeliness of a notice of appeal and the effect on the 30-day time limit of a trial court's subsequent decision on a Rule 59(e) motion to vacate or reconsider the court's earlier dismissal order. *Inge* states nothing about whether a trial court's failure to explicitly rule on a motion for new trial joined only as an alternative to a renewed motion for judgment as a matter of law affects the appellate court's jurisdiction to entertain an appeal of the JMOL.[8] There is no precedent in this Circuit addressing this precise issue.

The Ninth Circuit squarely addressed the jurisdictional effect of an undecided alternative motion for new trial in *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455 (9th Cir. 1993), *cert. denied*, 511 U.S. 1142 (1994). As in this case, in *Vollrath*, the district court granted the defendant's motion for judgment notwithstanding the verdict but did not issue a conditional ruling on the defendant's alternative motion for new trial as required by Fed. R. Civ. P. 50(c). The Court of Appeals found that this was error but determined the mere fact that the district court failed to comply with the requisites of the rule did not answer the question as to whether this error deprived the court of appellate jurisdiction. After careful analysis, the *Vollrath* court ultimately answered this question in the negative.

The court began by noting that Rule 50(c) does not specify the consequences for failure to issue a conditional ruling on the new trial motion. 9 F. 3d at 1458. The court further specifically observed that Rule 50(c) does not indicate that such a conditional ruling is a prerequisite to appellate jurisdiction.

The court, therefore, proceeded to examine Rule 50(c) and its interplay with Fed. R. App. P. 4(a), which governs the time for filing a notice of appeal, and noted that the authorities prior to the 1979 amendment adopting subsection (4) of Fed. R. App. P. 4(a) were "in general agreement that the district court's failure to rule on a new trial motion in the alternative is, at most, a procedural

---

[6] Rule 50(c) provides, in pertinent part:

> (1) If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial . . . .

Fed. R. Civ. P. 50(c)(1).

[7] 28 U.S.C. § 1291 provides:

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States. . . .

[8] *Catlin,* which is cited in *Inge*, is likewise inapposite. *Catlin* involved the question of finality for the purposes of "piece meal" appeals of pre-judgment orders entered in a condemnation action.

flaw that does not affect appellate jurisdiction."  *Id.*   The court then examined the effect of the addition of subsection (4) to Fed. R. App. P. 4(a),which, at the time, provided, as follows:

> If a timely motion under Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b)  to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. . . .[9]

The court first observed that the express words of Rule 4(a)(4) do not require an alternate ruling on a motion for new trial before a notice of appeal may be filed and then also noted that the policy behind the rule does not counsel that result:

> Rule 4(a) prevents a party from appealing a judgment when a pending post-judgment motion renders the judgment non-final. Fed. R. App. P. Rule 4(a). Specifically, the Advisory Committee note to the 1979 amendment to Rule 4(a)(4) makes clear that *the rule was intended to prevent the appellate court from assuming jurisdiction in a case "while the district court has before it a motion the granting of which would vacate or alter the judgment appealed from." Fed.R.App.P. 4(a)(4) Advisory Committee's note to 1979 amendment [emphasis supplied in original].* When a district court grants a motion for JNOV, that order is the final judgment of the court. The district court does not have before it [in an alternative motion for new trial] a motion "the granting of which would vacate or alter that judgment." The judgment based on the JNOV could be altered only by reversal on appeal, not by any ruling by the district court.

> We therefore conclude that we may properly exercise appellate jurisdiction over this case.

---

[9] This subsection of Fed. R. App. P. 4 has been amended several times since 1979; however, the subsequent amendments would not affect the issue presented in this appeal or the *Vollrath* court's analysis of the jurisdictional issue. In its present form, the pertinent provisions of Fed. R. App. P. 4(a)(4) provide:

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);
(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;
(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;
(iv) to alter or amend the judgment under Rule 59;
(v) for a new trial under Rule 59; or
(vi) for relief under Rule 60 if the motion is filed no later than 10 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment -- but before it disposes of any motion listed in Rule 4(a)(4)(A) -- the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

9 F.3d at 1459 (additional emphasis added).

Although not squarely addressing the question of jurisdiction, a number of other courts have addressed the question of how to proceed when confronted with an appeal of a decision on a motion for JMOL where the district court had failed to rule on an alternate motion for new trial. Although not directed toward the precise issue presented here -- whether the District Court's failure to rule upon an alternative motion for new trial deprives this Court of appellate jurisdiction -- these decisions are instructive as to how appellate courts have viewed such inaction by district courts.

In *Ellison v. Conoco, Inc.*, 950 F.2d 1196, 1206 (5th Cir. 1992), *cert. denied*, 509 U.S. 907 (1993), the Fifth Circuit affirmed the district court's ruling on the defendant's motion for JNOV (i.e., JMOL),[10] and then found that, in light of that affirmance, the district court's failure to rule on the defendant's alternative motion for new trial constituted at most harmless error. And, where the district court's ruling on a JMOL motion could be read as an inferential denial of the alternative new trial motion, appellate courts have found no error in a district court's failure to conform with the technical strictures of Rule 50(c)(1). *See, e.g., Cleveland v. Home Shopping Network, Inc.,* 369 F. 3d 1189, 1195-96 (11th Cir. 2004); *see also Normand v. Research Institute of America, Inc.*, 927 F.2d 857, 866 (5th Cir. 1991).

*Normand* is particularly helpful. In *Normand,* although the appellate court noted that the better practice would have been for the district court to have expressly ruled on the defendant's new trial motion, 927 F.2d at 866 n. 5, it determined that an express ruling was not necessary in that case because it found that a denial of the new trial motion could be inferred from the district court's ruling on the defendant's motion for judgment notwithstanding the verdict:

> Although the [district] court did not expressly rule on RIA's motion for new trial, its unequivocal judgment reflects an intent to dispose of the case completely and, inferentially, to reject the new trial motion. Reviewing the motion, and noting that RIA never sought a clarification of the judgment that would decide the new trial motion, we are convinced that it was denied.

927 F.2d at 866 (footnote omitted). *But see Havird Oil Co., Inc. v. Marathon Oil Co., Inc.*, 149 F.3d 283, 288 (4th Cir. 1998) ("Rule 50(c) requires an explicit ruling on a motion for new trial. . . *a priori,* the Rule does not permit entry of judgment to dispose of the motion implicitly.")

In addressing the question of whether an issue has been preserved for appeal, the Fifth, Seventh and Eleventh Circuits take the position that the burden is on the party whose motion invoked Rule 50(c) in the trial court to pursue a direct ruling on the alternative motion for a new trial when the district court granted the judgment as a matter of law in order to preserve the issue for appeal. *See, e.g., Vera Cruz v. Chesapeake & O. R.R.*, 312 F.2d 330, 332 (7th Cir. 1963), *cert. denied*, 375 U.S. 813 (1963); *Oberman v. Dun & Bradstreet, Inc.*, 507 F.2d 349, 353 (7th Cir. 1974); *Edwards v. Board of Regents*, 2 F.3d 382, 384 n. 6 (11th Cir. 1993); *Arenson v. Southern University Law Center*, 43 F.3d 194, 197 (5th Cir. 1995). Where the moving party did not press upon the lower court the issue of the need for a ruling on the new trial motion after the grant of a motion for JMOL, according to the Seventh and Eleventh Circuits it is deemed to have been abandoned. *Edwards, supra; Vera Cruz, supra.*

Under this approach, it would have been incumbent upon Defendants to file a motion for reconsideration or clarification in the district court if they also wanted a ruling on their alternative

---

[10] The 1991 amendments of Rule 50 replaced the terminology "directed verdict" and "judgment notwithstanding the verdict," or "JNOV," with the current terms "judgment as a matter of law" and "renewed judgment as a matter of law."

new trial motion after the district court granted their renewed motion for judgment as a matter of law, and their failure to do so would constitute a waiver of their right to raise this issue as a matter of appeal.

Other courts have taken the position that, notwithstanding the language of Fed. R. Civ. P. 50(c)(1) directing that "[i]f the renewed motion for judgment as a matter of law is granted, the [district] court *shall* also rule on the motion for a new trial," where an appeal is filed in a case where the district court failed to enter a conditional order on a new trial motion, the appellate court has discretion either to remand the matter to the district court to let it decide the new trial motion, or to decide the new trial motion itself in connection with the appeal of the JMOL. *See, e.g., Freund v. Nycomed Amersham*, 347 F.3d 752, 764-765 (9th Cir. 2003), and cases cited therein. *Cf., Neely v. Martin K. Eby Construction Co.*, 386 U.S. 317, 322 (1967) (noting that under Rule 50(c)(1), the trial judge should rule conditionally on the new trial motion when he grants judgment n.o.v. but finding implicit in the Rule's provisions that the appellate court has the right itself to grant or deny a new trial in appropriate cases).

The above-discussed decisions instruct on our jurisdictional question not only by their content but also by their silence because to have made the rulings they did, the various courts of appeals first would have had to have been satisfied that appellate jurisdiction existed.

It is well-established that the federal courts are under an independent obligation to examine their own jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607 (1990). Thus, the courts of appeals have an independent duty to satisfy themselves of their appellate jurisdiction before entertaining an appeal regardless of whether jurisdiction is challenged by the parties. *See General Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1024 (6th Cir. 1994). *See also, Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274 (10th Cir. 2001); *Kreider Dairy Farms, Inc. v. Glickman*, 190 F.3d 113, 118 (3d Cir. 1999); *Dannenberg v. Software Toolworks, Inc.*, 16 F.3d 1073, 1074 n. 1 (9th Cir. 1994). Accordingly, before the courts in the cases discussed herein could find harmless error or an inferential denial of an alternative new trial motion, for example, they would have had to have determined first that appellate jurisdiction existed. Therefore, their substantive rulings arguably also constitute *sub silentio* findings that the requisites for appellate jurisdiction were satisfied.

Guided by the various decisions discussed herein, we conclude that the District Court's failure to explicitly rule on Defendant's alternative motion for new trial in this case does not affect our jurisdiction over this appeal. We first note, as did the Ninth Circuit in *Vollrath,* that a Rule 50(c) alternative motion for new trial is not one of the motions listed in the current version of Fed. R. App. P. 4(a)(4) that would render a notice of appeal effective only after the district court enters an order disposing of such motion. Thus, under the plain language of Rule 4, there is nothing precluding this Court from assuming jurisdiction over this matter. Moreover, as the Ninth Circuit found in *Vollrath*, a conditional ruling on Defendants' alternative motion for new trial in this case would not vacate or alter the district court's decision on the renewed motion for judgment as a matter of law. The grant of the renewed motion for JMOL is the "final judgment" of the district court.

Furthermore, as the Fifth Circuit found with respect to the district court's ruling in *Normand*, in this case, it can be inferred not only from the Judgment but also from the District Court's various post-trial rulings that the District Court at least implicitly denied Defendants' alternative new trial motion when it granted Defendants' Renewed Motion for Judgment as a Matter of Law and then expressly denied both Plaintiff's subsequent Motion to Alter Judgment and his Alternative Motion for a New Trial. Additionally, as indicated above, Defendants did not pursue the alternative new trial issue in the District Court after its renewed motion for JMOL was granted. Defendants never filed a motion for clarification nor did they request an amendment of the judgment. Under these circumstances, we conclude that Defendants' alternative motion for new trial was implicitly denied

and that the District Court's failure to explicitly rule on the matter was at most a harmless procedural error which does not affect our jurisdiction over this appeal.

## B.     *STANDARD OF REVIEW*

We review *de novo* a district court's grant of judgment as a matter of law pursuant to Fed. R. Civ. P. 50.  *Snyder v. A.G. Trucking, Inc.*, 57 F.3d 484, 490 (6th Cir. 1995).   Judgment as a matter of law is proper where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the non-moving] party on that issue," and where the claim "cannot under the controlling law be maintained. . . without a favorable finding on that issue." Fed. R. Civ. P. 50(a).  In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, this Court applies the standard of review used by the courts of the state whose substantive law governs the action.  *Morales v. American Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998); *K & T Enters., Inc. v. Zurich Ins. Co*., 97 F.3d 171, 176 (6th Cir. 1996).

This diversity case is governed by Ohio substantive law.  Under Ohio law, "[t]he test for granting a directed verdict or a judgment n.o.v. is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the nonmovant." *Sanek v. Duracote Corp.*, 43 Ohio St. 3d 169, 539 N.E.2d 1114, 1117 (Ohio 1989).  Such a motion will be granted only if, after considering the evidence in this light, there can be but one reasonable conclusion as to the proper verdict.  *Constr. Interior Sys., Inc. v. Marriott Family Rest., Inc.*, 984 F.2d 749, 753 (6th Cir. 1993), *cert. denied*, 510 U.S. 869 (1993).

## C.     *DEFENDANTS DID NOT WAIVE THEIR POST-TRIAL JMOL ARGUMENT THAT PLAINTIFF FAILED TO PRODUCE EVIDENCE OF AT-WILL EMPLOYMENT*

Plaintiff raises a threshold question with respect to Defendants' renewed motion for judgment as a matter of law:  Plaintiff argues that the District Court was without authority to grant Defendants' renewed motion for judgment as a matter of law because Defendants failed to raise Kusens' failure to plead and prove employment at-will in their Rule 50(a) pre-verdict motion for JMOL.  Plaintiff thus argues that Defendants waived their right to raise this issue in a post-verdict motion.  Plaintiff contends that Defendants' pre-verdict oral motion for judgment as a matter of law on the public policy claim was predicated only upon one ground -- Plaintiff's failure to mention the public policy claim in his opening statement.  He claims no argument of failure to prove an essential element of his claim -- at-will employment -- was ever made.

Under Fed. R. Civ. P. 50(a), a motion for judgment as a matter of law must "specify the judgment sought and the law and facts on which the moving party is entitled to the judgment."  A post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion. *American and Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 159-60 (6th Cir. 1997). However, in stating the grounds in the required pre-verdict motion, technical precision is not necessary. *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 197 (8th Cir. 1995); *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 610 (5th Cir.1996), *cert. denied*, 519 U.S. 869 (1996) ("Technical noncompliance with Rule 50(b) may be excused in situations in which the purposes of the rule are satisfied.")

Although Rule 50(a) requires a motion for judgment as a matter of law to state the "specific grounds," the rule does not define how specific the grounds must be. *Anderson v. United Telephone Co. of Kansas*, 933 F.2d 1500, 1504 (10th Cir. 1991), *cert. denied*, 502 U.S. 940 (1991).  Because the requirement that a Rule 50(a) motion must precede a Rule 50(b) motion is "harsh in any circumstance," a Rule 50(a) motion should not be reviewed narrowly but rather in light of the purpose of the rules to secure a just, speedy, and inexpensive determination of the case. *Id.* at 1503. Accordingly, where Rule 50(a)'s purpose -- i.e., providing notice to the court and opposing counsel of any deficiencies in the opposing party's case prior to sending it to the jury -- has been met, courts

usually take a liberal view of what constitutes a pre-verdict motion sufficient to support a post-verdict motion. *See Rankin v. Evans*, 133 F.3d 1425, 1432-33 (11th Cir. 1998), *cert. denied*, 525 U.S. 823 (1998) (collecting cases).

Guided by these principles, the court in *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc., supra*, found a broadly-stated argument in the defendant's pre-verdict motion sufficient to authorize the consideration of the defendant's more specifically stated post-verdict motion. In that tort action, the defendant argued in its pre-verdict motion that, under Missouri law, there must be a duty of care owed to the plaintiff and that a mere breach of contract does not establish such a duty. Defendant repeated that same argument in its post-trial motion, but in a supplemental brief supporting that motion, provided further basis for its no-duty claim arguing that there can be no tort liability under Missouri law where the plaintiff is seeking recovery solely for economic losses. 53 F.3d at 197. The district court concluded that the only issue preserved for consideration was whether the defendant owed a duty of care that was independent of the parties' contractual relationship and, having already found in denying the defendant's pre-verdict motion that defendant owed such a duty, defendant's post-verdict motion was denied. *Id.*

The Eighth Circuit reversed, explaining:

> Although the economic loss ground advanced in Digital's post-trial motion may have been somewhat different from the duty-of-care ground advanced in the pre-verdict motion, we conclude that those grounds were inextricably intertwined. Under Missouri law, in any negligence action the plaintiff must first establish that a duty exists by the defendant to protect the plaintiff from the injury suffered. The mere existence of a contract does not give rise to a duty in tort. Similarly, there is no duty to exercise reasonable care to protect against a loss that is purely economic in nature. Consequently, in determining whether a breach of contract may give rise to tort liability, the nature of the alleged injury is an essential factor that must be considered.

> The substance of Rockport's negligence claim is for the recovery of losses arising out of [] Digital's alleged breach of contract. Thus, the nature of Rockport's alleged injury is an essential factor in determining whether Digital can be considered to have owed Rockport a duty of reasonable care. The district court did not consider the nature of Rockport's injury in answering the duty question. . . . Given that the nature of an alleged injury arising from a breach of contract is necessarily subsumed within the duty question, we conclude that the economic loss argument was adequately raised by Digital's duty-of-care argument. The nature of the claimed injury is a necessary element in answering the question whether Digital owed Rockport a duty of care that was independent of the parties' contractual relationship. Accordingly, we conclude that Digital's economic loss argument is properly before us.

*Id.* at 198 (citations and some internal punctuation omitted). *See also Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691 (3d Cir.1993) (holding that an issue raised in a pre-verdict motion, albeit "a bit obliquely," sufficed to warrant consideration of a more specifically-stated post-verdict motion for JMOL).

This case is substantially similar to *Rockport.* In *Rockport*, the defendant presented in its pre-verdict motion only a generalized no-duty-of-care argument challenging the sufficiency of plaintiff's negligence claim. Then, in its post-verdict motion, defendant argued with specificity the failure of the plaintiff to establish an "essential element" of the duty of care. Here, Defendants' pre-verdict motion argument was a general argument made orally that Plaintiff failed to argue his public

policy claim, at all. The post-verdict motion, which was made in writing and was fully briefed, presented the failure to establish a public policy claim with specificity.

In making his pre-verdict motion, defense counsel stated:

The public policy claim was not argued, not mentioned in the opening statement. Therefore, at that point in time, I was actually entitled to make a directed verdict [motion] after the opening statement and I am doing that [a]t this point now, because there's been no reference to it in this case.

Plaintiff's counsel countered:

[W]e certainly made reference to all the pertinent facts which gave rise [to] all of the claims pled. . . including the wrongful discharge and policy. The fact that we didn't identify the legal theory, public policy, is no basis to have the direct[ed] verdict. The facts stated during the open[ing] statement was [sic; were] sufficient to state the claim.

After considering the arguments of counsel, the court noted Defendants' exception for the record and expressly acknowledged, "I believe [Defendants] are correct. There has been no argument regarding [the] public policy claim in this case." Nonetheless, the District Court determined that the public policy claim should be submitted to the jury and to "leave the matter to be reviewed. . . at a later time." Defense counsel's argument and the court's on-the-record statements and ruling were sufficient to alert Plaintiff to the evidentiary insufficiency alleged by Defendants -- his failure to plead and prove his cause of action. *See generally, Gutzwiller v. Fenik*, 860 F.2d 1317, 1330 (6th Cir. 1988) (a pre-verdict motion must alert opposing counsel to the evidentiary insufficiency with enough specificity to allow counsel the opportunity to correct the deficiency before the matter is submitted to the jury).

After the jury returned a verdict in favor of Plaintiff, Defendants submitted a written motion and brief arguing that "Plaintiff failed to meet his burden to plead and prove all the elements necessary to establish a cause of action for wrongful discharge in violation of Ohio public policy," and then argued specifically, the failure to plead or prove three elements in particular, including the element of at-will employment.

Although this is a close question, we find no error in the District Court's conclusion that "[i]n the Motion for J.N.O.V. [sic; JMOL], Pascal simply restate[d] the identical argument [raised in its pre-verdict motion] in more precise terms." 2/23/04 Order and Decision, p. 7. Accordingly, we find that no waiver occurred.

**D.     *EMPLOYMENT AT-WILL IS AN ESSENTIAL ELEMENT OF A CLAIM OF WRONGFUL DISCHARGE IN VIOLATION OF OHIO PUBLIC POLICY***

Plaintiff next argues that the District Court erred in determining that at-will employment is an essential element of an Ohio public policy claim and that Plaintiff, therefore, was required to prove his status as an at-will employee at trial.

The tort action for wrongful discharge in violation of public policy had its genesis in Ohio in *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). In that case, a terminated employee brought a complaint alleging that he was discharged as a result of a court order that required his employer to withhold the terminated employee's child support payments through wage assignment. At that time in Ohio, O.R.C. § 3113.213(D) prohibited

the firing of employees because of court orders to withhold earnings.[11] The trial court dismissed the complaint finding that it failed to state a claim upon which relief could be granted because no claim sounding in tort existed in Ohio for wrongful discharge. The court of appeals affirmed. The Ohio Supreme Court reversed, finding that, although O.R.C. § 3113.213(D) did not provide for a civil cause of action to be brought by an aggrieved employee, public policy required that the terminated employee be given a common-law cause of action in wrongful discharge to redress a violation of the statute.

Accordingly, the *Greeley* court created a public policy exception to the at-will employment doctrine:

> We believe that the time has come for Ohio to join the great number of states which recognize a public policy exception to the employment-at-will doctrine. The General Assembly has expressed its will that employers be prohibited from discharging employees for the reason upon which appellant bases his cause of action. It is our job to enforce, not frustrate, that policy.
>
> Therefore, we hold that public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute.

49 Ohio St.3d at 233-34, 551 N.E.2d at 986 (footnote omitted).

It is under this tort theory that Plaintiff Kusens sued his former employer. However, it is well-settled under Ohio law that in order for an employee to bring a cause of action pursuant to *Greeley, supra*, that employee must have been an employee at-will. *See Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254, 258, 652 N.E.2d 948, 951 (1995); *Stephenson v. Yellow Freight Systems, Inc.*, No. 99 AP-77, 1999 WL 969817, *5 (Ohio App. 10 Dist. 1999), *app. denied*, 88 Ohio St. 3d 1432, 724 N.E.2d 809 (2000); *Edwards v. Dubruiel*, No. 2002-CA-50, 2002 WL 31846259, *8 (Ohio App. 2 Dist. 2002) ("*Greeley* claims are limited to at-will employees"); *Woods v. Miamisburg City Schools*, 254 F. Supp. 2d 868, 877 (S.D. Ohio 2003) ("[A]lthough Ohio recognizes claims for discharge in violation of public policy, Ohio courts have repeatedly rejected attempts to expand that claim beyond the discharge of an at-will employee."). It has further been explicitly held that "to establish a claim for tortious violation of public policy, [Plaintiff] had to plead and prove that he was an employee at will." *Strausbaugh v. Ohio Dept. of Transportation*, 150 Ohio App.3d 438, 449, 782 N.E.2d 92, 100 (2002). Where the discharged employee fails to prove at trial that he was an employee at-will, entry of judgment in favor of the defendant-employer is proper. *See id.*, 150 Ohio App. 3d at 449, 782 N.E. 2d at 101.

### 1.     **Coolidge v. Riverdale Local School District** *Did Not Abrogate the Requirement of At-Will Employment*

Plaintiff claims that the rule enunciated in *Haynes v. Zoological Soc. of Cincinnati* -- that in order for an employee to bring a cause of action pursuant to *Greeley*, the aggrieved employee must have been an employee at-will -- was overruled by the Ohio Supreme Court in *Coolidge v. Riverdale Local School District*, 100 Ohio St.3d 141, 797 N.E.2d 61 (2003). Plaintiff contends, that in *Coolidge*, the Ohio Supreme Court created a cause of action for wrongful discharge in violation of public policy even though the plaintiff in *Coolidge* was not an at-will employee. Plaintiff believes

---

[11] O.R.C. § 3113.213 was repealed in 2000 and provisions analogous to former § 3113.213 are now codified at § 3121.39 which provides:

> No. . . employer may use a requirement to withhold personal earnings contained in a withholding notice issued under section 3121.03 of the Revised Code as a basis for a discharge of, or for any disciplinary action against, an employee, or as a basis for a refusal to employ a person.

that since Coolidge was allowed to pursue her Ohio public policy claim even though she was not an at-will employee, a proper inference would be that at-will employment is no longer a prerequisite to establishing a claim for wrongful discharge in violation of a public policy.

Plaintiff misconstrues *Coolidge*. In that case, an Ohio public school teacher suffered a work-related injury and was receiving workers' compensation temporary total disability ("TTD") benefits. When the teacher exhausted all leave available under her employment contract, the school board terminated her due to her continued absence from work.[12] Following her termination, Coolidge filed suit claiming that her discharge contravened the public policy reflected in the Ohio Workers' Compensation Act's TTD provision, O.R.C. § 4123.56, and the anti-retaliatory provision of the statute, O.R.C. § 4123.90, which provides:

> No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

Prior to *Coolidge*, Ohio recognized such claims only when the plaintiff's claim was predicated upon the filing of a workers' compensation claim. In *Coolidge*, the Ohio Supreme Court determined that the public policy embodied within the Workers' Compensation Act warranted extending the coverage of the anti-retaliation statute to persons already receiving TTD benefits, as well. The *Coolidge* court reasoned:

> A temporarily and totally disabled employee is by definition physically unable to perform the duties of his or her former position of employment. Considering that the statute is designed to provide the injured worker with the necessary means to subsist during a period of TTD, it would be inconsistent to allow the employer to fire such a worker solely because of the disability for which the employee is being compensated.
>
> * * *
>
> In our opinion, the policy of protection embodied in the Workers' Compensation Act can be effectuated only if an employer is not permitted to discharge an employee for being absent from work due to an allowed injury for which the employee is receiving TTD compensation. *We hold, therefore, that an employee who is receiving TTD compensation pursuant to R.C. 4123.56 may not be discharged solely on the basis of absenteeism or inability to work, when the absence or inability to work is directly related to an allowed condition.*

100 Ohio St. 3d at 150, 797 N.E.2d at 69-70 (citations omitted and emphasis added). *See also Salyer v. Honda of America Mfg., Inc.*, No. 2:04 CV 988, 2005 WL 2338786, *10 (S.D. Ohio 2005) ("The rule prohibiting the discharge of an employee based on absences for an allowed injury is necessary to 'protect the right of employees to freely pursue workers' compensation benefits without fear of reprisal. . . .'"(quoting *Coolidge*, 797 N.E.2d at 66-67)).

---

[12] As an Ohio public school teacher, Coolidge was statutorily guaranteed an employment contract terminable for cause only. O.R.C. § 3319.16 provides, in pertinent part:

> The contract of any teacher employed by the board of education of any city, exempted village, local, county, or joint vocational school district may not be terminated except for gross inefficiency or immorality; for willful and persistent violations of reasonable regulations of the board of education; or for other good and just cause. . . .

As is evident from the foregoing excerpt, the "public policy" holding in *Coolidge* was narrowly confined to claims of discharge in contravention of the policy underpinnings of the Workers' Compensation Act. Nothing in *Coolidge* abrogated the requirement of at-will employment for violation of public policy claims outside of the workers' compensation context. Had the Ohio Supreme Court intended to eliminate the at-will requirement across the entire spectrum of public policy-based lawsuits, it could have said so. Rather *Coolidge*'s holding is tightly tethered to the unique policy considerations of Ohio's workers' compensation statute. In our view, it would not be appropriate for a federal appellate court sitting in diversity to extend the Ohio Supreme Court's decision beyond its clearly demarcated boundaries.

### 2. *The Presumption of At-Will Employment Does Not Relieve Plaintiff of Pleading and Proving All of the Elements of His Public Policy Tort Claim*

Plaintiff further argues that even if at-will employment is a requirement of a claim of wrongful discharge in violation of public policy he was relieved of the burden of pleading and proving this element because, under Ohio law, a contract for employment is presumed to be at-will. Plaintiff is correct that, when the *nature* of an employment contract is at issue, the presumption is that the contract is terminable at-will. *See Mers v. Dispatch Printing Company*, 19 Ohio St. 3d 100, 103, 483 N.E.2d 150, 153 (1985); *Clark v. Collins Bus Corp.*, 136 Ohio App. 3d 448, 451, 736 N.E.2d 970, 973 (2000). Indeed, as the *Mers* court observed, this has long been recognized as standard contract law in Ohio. *See, e.g., LaFrance Elec. Constr. & Supply Co. v. International Brotherhood*, 108 Ohio St. 61, 140 N.E. 899 (1923); *Henkel v. Educ. Research Council*, 45 Ohio St.2d 249, 344 N.E.2d 118 (1976); *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 348 N.E.2d 144 (1976); *Evely v. Carlon Co.*, 4 Ohio St.3d 163, 447 N.E.2d 1290 (1983). The rule extrapolated from these breach of contract cases is that when an issue is presented as to the nature, or type, of employment relationship that existed between the parties, absent evidence to the contrary, the presumption is that the employment relationship is at-will. However, these breach of contract cases do not control in questions concerning the burden of proof in a public policy *tort* claim.

As noted, under *Greeley* and its progeny, it is the affirmative duty of the plaintiff seeking to recover under a public policy tort theory to *plead and prove* that he was an at-will employee. This was made very clear by the court in *Strausbaugh v. Ohio Dept. of Transportation*, *supra*. In *Strausbaugh*, following a bench trial, the trial court entered judgment in favor of the defendant-employer on the plaintiff's public policy tort claim. The Ohio appellate court affirmed the trial court's judgment, finding:

> Here, *Strausbaugh neither pled nor proved that he was an employee at will* or that he received any form of discipline or was discharged.
>
> * * *
>
> *[T]o establish a claim for tortious violation of public policy, Strausbaugh had to plead and prove that he was an employee at will*. *See Stephenson v. Yellow Freight Sys., Inc.* (Oct. 26, 1999), Franklin App. No. 99AP-77, 1999 WL 969817, citing *Haynes v. Zoological Soc. of Cincinnati* (1995), 73 Ohio St.3d 254, 652 N.E.2d 948, syllabus. *He failed to do so.*
>
> * * *
>
> . . . Because Strausbaugh failed to prove he was an at-will employee or that he was discharged or disciplined in violation of public policy, the judgment was not contrary to the weight of the evidence. . . .

150 Ohio App.3d at 449-450, 782 N.E.2d at 100-101 (emphasis added).

*Strausbaugh* makes clear that Plaintiff's contention that he was relieved of the burden of pleading and proving at trial that he was an at-will employee is without merit.

For all of the foregoing reasons, we find no error in the District Court's grant of Defendants' renewed motion for judgment as a matter of law.

## E.     *THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING PLAINTIFF HIS REQUEST FOR A NEW TRIAL ON THE AT-WILL ISSUE*

Plaintiff also argues that, even if his trial proofs were deficient, the District Court should have granted him a new trial limited to the issue of his employment status.

We review a district court's denial of a motion for new trial for an abuse of discretion, which we have defined as "a definite and firm conviction that the trial court committed a clear error of judgment." *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 818-19 (6th Cir. 1999) (quoting *Tobin v. Astra Pharm. Prod.*, 993 F.2d 528, 541 (6th Cir. 1993)). A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir.1995).

Other than to assert in his appellate brief that "as the judgment stands now, it was the result of the trial being unfair" to him,[13] Plaintiff fails to present any substantive argument to support his claim that he is entitled to a new trial independent of the argument (which we have already rejected) that the District Court erred in granting the Defendants' renewed motion for JMOL. The reasons supporting the District Court's grant of Defendants' motion for judgment as a matter of law also support the denial of Plaintiff's new trial motion. Plaintiff is not entitled to a new trial to establish the elements of the claim he failed to make out when he presented his case to the jury. He has already had his one "bite of the apple" and he failed.

Accordingly, we find no abuse of discretion on the part of the District Court in denying Plaintiff's motion for new trial.

## F.     *PLAINTIFF WAIVED HIS RIGHT TO RAISE HIS APPELLATE ARGUMENTS REGARDING HIS DISCRIMINATION AND RETALIATION CLAIMS*

Plaintiff next contends that the District Court erred in granting Defendants' pre-verdict motion for JMOL on his statutory age discrimination and retaliation claims. The District Court dismissed Plaintiff's age discrimination and retaliation claims, holding that the Ohio Civil Rights statute applies only to employers who have four or more employees within the State of Ohio. Because Defendant Pascal Company had at most two employees within the state, the court found that provisions of Civil Rights statute were inapplicable and, hence, Plaintiff could maintain no claim of age discrimination or retaliation under the statute against any of the Defendants.

---

[13] We included "the trial being unfair to the moving party in some fashion" as one of the grounds that would warrant a new trial in our decision in *Holmes v. City of Massillon*, 78 F.3d 1041, 1046 (6th Cir. 1996), *cert denied*, 519 U.S. 935 (1996):

> Pursuant to Federal Rule of Civil Procedure 59(a), a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Generally courts have interpreted this language to mean that a new trial is warranted when a jury has reached a "seriously erroneous result" as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias.

*Id.* at 1045-46.

As we noted in *Holmes*, the "trial being unfair to the moving party in some fashion" ground requires a showing that the proceedings were influenced by prejudice or bias. There has been no such showing in this case.

In this appeal, Plaintiff argues that even if an employer is not covered under the statute because of insufficient number of employees within the state, there is no requirement that there be four or more employees within the state in order for individual supervisors and managers such as Defendants Siwinski and Paschall to be held liable for discrimination. Plaintiff further argues that the statutory prohibition against retaliation in O.R.C. § 4112.02(I) is not limited in its application to "employers" but rather applies to "any person," and since "person" is defined in the statute as including corporations, the District Court erred in dismissing his statutory retaliation claim against Pascal Company. Plaintiff, however, did not raise either of these arguments in the District Court and raises them instead for the first time in this appeal.

In opposing Defendants' motion for JMOL Plaintiff made no argument that the individual supervisor/manager defendants could be held liable even if the employer could not because it did not have the statutorily required four employees within the state. *See* Trial Tr. pp. 383-384. Plaintiff argued only that the court should count all employees of an employer who does business within the State of Ohio, no matter where they are located, for purposes of coverage under the statute. *Id.*[14]

It is well-settled that issues not presented to the district court but raised for the first time on appeal are not properly before this Court. *See J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1488 (6th Cir. 1991); *Boone Coal & Timber Co. v. Polan*, 787 F.2d 1056, 1064 (6th Cir. 1986). *See also, Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ("[T]he failure to present an issue to the district court forfeits the right to have the argument addressed on appeal.") As we explained in *Armstrong*, this Court's "function is to review the case presented to the district court, rather than a better case fashioned after a[n] ... unfavorable order." *Id.* (citations omitted). Accordingly, we decline to consider Plaintiff's arguments concerning the dismissal of his discrimination claim.

Kusens has also waived his argument on appeal that the district court should not have dismissed his retaliation claims because retaliation claims may be brought against "persons," not only "employers." The Defendants' oral motion for dismissal appears to have concerned only the discrimination claims, so it may not be surprising that Kusens did not raise his argument concerning his retaliation claim in response to that motion. Nevertheless, after a recess, the District Court dismissed the discrimination claims and then held: "The plaintiff's claim for retaliation will likewise be dismissed." Kusens neither objected after the district court's dismissal of his retaliation claim nor filed a motion for reconsideration. Kusens' failure to allow the District Court to correct any contested error deprives him now of the opportunity to raise this argument on appeal.

## G.    *DEFENDANTS' CROSS-APPEAL IS MOOT*

Finally, Defendants have cross-appealed the District Court's denial of their pre-trial motion for summary judgment. The District Court denied Defendants' motion for summary judgment finding that Plaintiff (1) presented sufficient evidence to satisfy the requirements of a *prima facie* case of age discrimination and (2) presented sufficient evidence to create a question of material fact

---

[14] With regard to the statute's anti-discrimination provisions, Plaintiff argued only that the Ohio statute should be construed like Title VII which, for purposes of the federal statute's 15-employee requirement, counts employees outside the United States so long as the employer does business within the United States. Thus, Plaintiff argued:

> [O]n the issue of the number of employees, we believe that's too narrow of a reading of the statute. While it does refer to the number of employees, that is, the employer has employees, we believe that the proper reading of that statute is that the employer has to do business within the state and provided that the employer does business within the state, the number of employees that the employer has in total should be counted. . . regardless of whether those employees are located in state or out of state.

*See* Trial Tr. p. 384.

on the issue of pretext and the ultimate issue of discrimination.  The court also found that Plaintiff had presented sufficient evidence of an "adverse employment action" to support his claim of retaliation.  Accordingly, the court allowed Plaintiff to proceed to trial on his claims.

As discussed above, however, Defendants ultimately succeeded on post-trial motions in obtaining the dismissal of all of Plaintiff's claims (albeit on legal grounds not argued in their motion for summary judgment) and, for the reasons set forth in this Opinion, we have affirmed all of the District Court's rulings.  Accordingly, as Defendants themselves concede, the issues presented in their Cross-Appeal are now moot.

## IV. *CONCLUSION*

For all of the reasons set forth above, the Judgment of the District Court is **AFFIRMED.**